UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| JENEAN MCBREARTY, ) | |
| ) | |
| Plaintiff, ) | Civil No. 5:16-cv-121-JMH |
| ) | |
| v. ) | |
| ) | |
| DR. VICTOR KAPPELER, et al., ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Defendants' Motion to Dismiss [DE 17]. Plaintiff has filed a Response [DE 19] stating her objections to the Motion, and Defendants have filed a Reply [DE 23] in further support of their motion. It is now ripe for consideration, and the Court concludes that it shall be granted for the reasons stated in this Memorandum Opinion and Order.

I.

Plaintiff was a student in an online class taught by Dr. Carole Garrison at Eastern Kentucky University ("EKU"). Class discussion occurred online in a message-board system called Blackboard. During the course, Plaintiff complains that one or more of her posts on the class message board were removed by Garrison and that Garrison had notified two other students in the class. In those communications, Garrison referenced Plaintiff's age and indicated that she felt that Plaintiff's communications had used "code words" for racist ideas. She complains that Garrison

shared Plaintiff's final grade in the class with one of those students and told her about private or out-of-class conversations between Garrison and Plaintiff. Plaintiff complained to the acting dean of the department and was referred to EKU's Office of Equity and Inclusion (OEI). She complains, as well, that she has heard nothing of the results of that complaint, notwithstanding inquiries that she made to Dean Victor Kappeler, and has heard nothing as to the results of any investigation made in response to her subsequent complaints to the Department of Education concerning a possible Federal Educational Rights and Privacy Act ("FERPA") violation. Plaintiff avers that she complained to the Civil Rights Commission, which set up a mediation but ultimately closed the case because Plaintiff had not filed her complaint in a timely matter. In her Amended Complaint [DE 14], she avers that EKU, the EKU College of Justice and Safety, and Kappeler and Garrison, in both their official and individual capacities, engaged in age discrimination arising under the Student Handbook, invasion of her privacy and violations of FERPA, as well as negligent supervision, and that they violated her right to free speech under the First Amendment and to due process under the Fourteenth Amendment to the United States Constitution.

## II.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions." *Id*. Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.

EKU is an arm of the Commonwealth of Kentucky and, thus, has sovereign immunity from claims where immunity is not waived in the absence of an exception.[1] *See* U.S. Const. amend. XI; *see, e.g.*, *Robinson v. Bd. of Regents of EKU*, 475 F.2d 707, 711 (6th Cir.1973) (making the necessary holding that EKU is an agency of the Commonwealth in upholding curfew regulations that were only applicable to female dormitory residents under an equal protection challenge); *Harrison v. Chitwood*, 5:12-CV-336-JMH, 2013 WL 593994, *2 (E.D.Ky. Feb. 15, 2013); *Clements v. Eastern Kentucky Univ.*, No. Civ. A. 5:05-466-JMH, 2006 WL 1464617, *2-3 (E.D.Ky. May 22,

---

[1] For that matter, EKU is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Alexander v. Univ. of Kentucky*, No. 5:10-CV-48-REW, 2012 WL 1068764, at *11 (E.D. Ky. Mar. 28, 2012) ("UK is entitled to summary judgment because, as an arm of the Commonwealth, it is not a 'person' to whom liability under section 1983 may attach") (citing *Will*, 491 U.S. at 71; *Dillon-Barber v. Regents of Univ. of Mich.*, 51 F. App'x 946, 952 n. 6 (6th Cir. 2002)).

2006). Further, claims against the EKU College of Justice and Safety, which is a subdivision of EKU, and those against Kappeler and Garrison in their official capacities are merely different ways of pleading actions against EKU. *See Kentucky v Graham*, 473 U.S. 159, 165 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent") (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)); *Harrison*, 2013 WL 593994 at *2; *Clements*, 2006 WL 1464617 at *2-3. Plaintiff's claims against EKU, the EKU College of Justice and Safety, and Kappeler and Garrison in their official capacities asserted in the Amended Complaint shall be dismissed.

IV.

Next, the Court dismisses Plaintiff's bare bones claim for age discrimination against Kappeler and Garrison, in their individual capacities, because she bases the claim upon a provision in the University Student Handbook. In this instance, the handbook Plaintiff relies upon provides that "[t]he University Handbook for Students serves as a means of communicating to the student the rights, responsibilities, and obligations of being a member of the University community; however, this is not to be regarded as a contract or offer to contract." *See* University Handbook for

Students at p. 4.[2] In the absence of some intent on the part of EKU to be bound by the provisions, the Court is not persuaded that it somehow provides the basis of either a general age discrimination claim or a contractual claim premised on age discrimination by which Plaintiff can recover. *See Green v. Sandy*, No. 5:10-CV-367-JMH, 2011 WL 4688639, at *4 (E.D. Ky. Oct. 3, 2011) (observing that the EKU student athlete handbook "is a unilateral policy manual which states that EKU "reserves the right to alter, amend or modify this handbook at any time without prior notice." As with handbooks in the employment context, "[i]n order to constitute a contract,... the handbook must contain specific language showing [EKU's] intent to be bound by the handbook's provisions.") (internal citations omitted).

V.

Plaintiff's claims for violation of FERPA against Kappeler and Garrison in their individual capacities are also dismissed, as FERPA grants aggregate not individual rights and offers no protected interests to the individual student, like Plaintiff, which can be enforced by this Court. *Gonzaga Univ. v. Doe*, 536

---

[2] "When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein" *See Bassett v. NCAA*, 528 F.3d 426, 429 (6th Cir.2008)). In this instance, the handbook is referred to in the complaint and, in any event, likely constitutes a public record since it can be viewed at EKU's website. *See* http://studentaffairs.eku.edu/sites/studentaffairs.eku.edu/files/files/Student%20Handbook.pdf (last viewed March 30, 2017).

U.S. 273, 291 (2002) ("FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions. They therefore create no rights enforceable under § 1983."); *see Bevington v. Ohio Univ.*, 93 Fed. App'x 748, 750 (6th Cir. 2004). To the extent that Plaintiff seeks to graft a Fourth Amendment claim or to articulate an invasion of privacy claim vis à vis FERPA, her claim is without merit. *See U.S. v. Jacobsen*, 466 U.S. 109, 137-38 (1984) (stating that "the requirements of the Fourth Amendment apply only to 'searches' and 'seizures…'"); *Small v. Fetter,* 5:14-006-KKC, 2015 WL 1393585, at *4 (E.D. Ky. Mar. 25, 2015) ("[T]he fourth amendment cannot be triggered simply because a person is acting on behalf of the government. Instead the fourth amendment will only apply to governmental conduct that can reasonably be characterized as a 'search' or a 'seizure'") (quoting *United States v. Attson*, 900 F.2d 1426, 1429 (9th Cir. 1990)); *L.S. v. Mount Olive Bd. of Educ.*, 765 F. Supp. 2d 648, 657 (D.N.J. 2011) ("plaintiffs' claims under the Fourth Amendment must be dismissed because the disclosure of a student's confidential record by school district employees does not implicate Fourth Amendment rights"); *see also Katz v. United States*, 389 U.S. 347, 350 (1967) ("[T]he Fourth Amendment cannot be translated into a general constitutional 'right to privacy'").

VI.

Next, the Court concludes that Plaintiff's claim for relief under the Commonwealth of Kentucky's tort of invasion of privacy cannot survive this motion on the facts averred in the Complaint against Keppler and Garrison in their individual capacities. "There are four theories under which a plaintiff may recover for invasion of privacy under Kentucky law: (1) intrusion upon another person's seclusion, (2) appropriation of another person's name or likeness, (3) unreasonable publicity into another person's private life, and (4) publicity that places another person in false light." *Dukes v. Mid-E. Athletic Conference*, No. 3:16-CV-00303-CRS, 2016 WL 5844608, at *3 (W.D. Ky. Sept. 30, 2016); *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (adopting the general invasion of privacy principals found in Restatement (Second) of Torts (1976), § 652A). In this instance, Plaintiff complains that Defendant Garrison made unreasonable publicity into Plaintiff's private life, presumably when she shared information about their conversations and about Plaintiff's grade with another student. "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Ghassomians v. Ashland Ind. School Dist.*, 55 F. Supp.2d 675, 693

(quoting Restatement (Second) of Torts, § 652D). "Publicity" where given to a private life means that the information was passed along in a way to substantially certain to become general knowledge either through dissemination to the public at large or to a multitude of persons. Restatement (Second) of Torts, § 652D, cmt. (a). Where a communication is made to a single person or a small group of persons, it does not constitute "publicity." *Id*. In this instance, Plaintiff has not identified the type of publicity required to state a claim for invasion of privacy against Garrison or any of the other defendants, for that matter. This claim shall be dismissed.

## VII.

Only Plaintiff's claims under 42 U.S.C. § 1983 alleging a violation of her right to freedom of speech under the First Amendment and her right to due process under the Fourteenth Amendment of the United States Constitution against Kappeler and Garrison, in their individual capacities, remain for the Court to consider. The Court is not persuaded, however, that Plaintiff can state a claim on this theory against Kappeler. She complains that, as Garrison's supervisor, he did not take action to unwind any harm that she experienced once "he knew of the issue" and that he did not discipline Garrison. Amended Compl. at 6. Even assuming that he should have done so, the facts of the Complaint suggest nothing more than mere "tacit approval of the goings on." *Gregory*

*v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (citing *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999)). "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Id.* (quoting *Bass*, 167 F.3d at 1048). "Rather, the supervisors must have actively engaged in unconstitutional behavior. Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Id.* Plaintiff avers that, while Kappeler "could not have prevented Dr. Garrison from committing her [alleged] wrongdoing against Plaintiff, he is still liable for what he did or didn't do after the fact i.e. he was negligent" [DE 19 Page ID# 114]. This is not enough, and Plaintiff's remaining claims against Kappeler must be dismissed, as well.

### VIII.

Finally, Plaintiff cannot defeat Defendants' Motion to Dismiss by claiming that she needs discovery with respect to the customs and practices of Defendants. Litigation before this Court is not an opportunity to engage in a fishing expedition, and she will not be permitted to engage in this course of conduct.

### IX.

For all of the reasons stated above, all of Plaintiff's claims against EKU, the EKU College of Justice and Safety, and Kappeler and Garrison in their official capacities are dismissed with prejudice. All of Plaintiff's claims against Defendant Kappeler in

his individual capacity are dismissed with prejudice. Plaintiff's claims against Defendant Garrison in her individual capacity are dismissed with prejudice, save for her claims under 42 U.S.C. § 1983 alleging a violation of her right to freedom of speech under the First Amendment and her right to due process under the Fourteenth Amendment of the United States Constitution.

Accordingly, **IT IS ORDERED:**

(1) that Defendants' Motion to Dismiss [DE 17] is **GRANTED.**

Pursuant to Fed. R. Civ. P. 16 and 26, **IT IS FURTHER ORDERED** as follows:

(2) that within twenty-one (21) days from the date of service of this Order, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Fed. R. Civ. P. 26(a)(1), as amended December 1, 2010, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f), as amended December 1, 2015.

(3)  that within ten (10) days after the meeting the parties shall file a joint status report containing:

(a)  the discovery plan. In formulating their plan, the parties should consider the concerns described in Fed. R. Civ. P. 26(b)(1), as amended December 1, 2015, as well as the Court's belief that discovery should last between three and five months.

(b) the parties' estimate of the time necessary to file pretrial motions.

(c) the parties' estimate as to the probable length of trial.

(d) the dates mutually convenient for trial.

(e) the parties' decision as to whether the action may be referred to a United States magistrate judge for trial pursuant to 28 U.S.C. § 636(c).

(f) the parties' determination as to whether the resolution of the case may be aided by mediation or other special procedures as authorized by statute or local rule.

Each party is directed to advise the Court at the time of the submission of the joint report of all parent corporations, subsidiaries, affiliates, members and/or partners with which it is associated.

This the 31st day of March, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge